The PASCAGOULA–MOSS POINT
BANK, Appellant,

.v.

CITIZENS FIDELITY BANK & TRUST
COMPANY, Executor of the Estate of
Gaines P. Wilson, Deceased, Appellee.

Court of Appeals of Kentucky.

Nov. 4, 1977.

Rehearing Denied Jan. 6, 1978.

Discretionary Review Denied
April 25, 1978.

James G. Apple, Stites, McElwain & Fowler, Louisville, Roy C. Williams, Mege-

hee, Brown & Williams, Pascagoula, Miss., for appellant.

Foster L. Haunz, Louisville, for appellee.

Before MARTIN, C. J., and HOWARD and COOPER, JJ.

COOPER, Judge.

The decedent, Gaines P. Wilson, Sr., was the principal in a corporation known as the Coastal Construction Company, Inc. On June 8, 1972, the Pascagoula Bank of Pascagoula, Mississippi, made a loan to the Coastal Construction Company, Inc. in the amount of $10,000 at the request of the decedent, Wilson. The loan was evidenced by a note signed by the president of the Coastal Construction Company, G. C. Arbogast. The guaranty on the back of the note was signed by the decedent, Gaines P. Wilson, Sr., and G. C. Arbogast, both signing as endorsers and guarantors of the note. On July 12, 1972, the decedent, Wilson, executed to the Pascogoula Bank a continuing guaranty agreement in which he guaranteed loans to the Coastal Construction Company, Inc. in the sum of $100,000.

The relevant language of the guaranty agreement reads as follows:

I hereby give this continuing guaranty to the said Pascagoula-Moss Point Bank, Pascagoula, Mississippi, hereinafter called "Bank", its transferees or assigns, for the payment in full, together with all interest, attorney fees, other fees, and charges of whatsoever nature and kind, of any indebtedness, direct or contingent whether secured or unsecured, of said debtor to said Bank up to the amount of One Hundred Thousand and no/100 ($100,000.00) Dollars, whether due or to become due, and whether now existing or hereafter arising. The Bank may, one or more times in its judgment, grant extensions, take and surrender securities, accept compositions, release or discharge endorsers, guarantor's or other parties, grant releases and discharges generally, make changes of any sort whatever in the terms of its contract or manner of doing business with the debtor and with other parties and securities in relation thereto without notice to the undersigned, such notice being hereby specifically waived. . . . It is also understood and agreed that this continuing guaranty does not supersede nor cancel any pre-existing guaranty or guaranties given by any of the undersigned on behalf of the borrower named above but to the contrary shall be in addition thereto.

As a result of the above guaranty agreement, the Pascagoula Bank loaned $100,000 to the Coastal Construction Company, Inc. which is evidenced by three (3) notes dated July 12, 1972; August 2, 1972; and August 10, 1972. Again, these notes were signed by the president of the Coastal Construction Company, G. C. Arbogast.

On February 13, 1974, the Pascagoula Bank assigned the continuing guaranty agreement to the Whitney National Bank of New Orleans, Louisiana, and relinquished any right, title or interest in and to the $100,000 in notes executed by Coastal.

The Pascagoula Bank has never been paid on the $10,000 note dated June 8, 1972. The Coastal Construction Company, Inc. dissolved at the decedent's death on September 4, 1972, and G. C. Arbogast, who signed the original note individually and for the Coastal Construction Company, had not been found at the date this action was commenced. Consequently, the Pascagoula Bank filed the original petition seeking payment on the note from the decedent, Wilson's, estate. The lower court held that the guaranty agreement of July 12, 1972, signed by the decedent, Wilson, by its language released Wilson from the $10,000 guaranty of June 8, 1972.

The issue before the Court is:

WHETHER THE FINDINGS OF THE LOWER COURT ARE CLEARLY ERRONEOUS.

The appellant is correct in stating that the present Kentucky case law is of no help in aiding the Court specifically with the issue before us. 38 Am.Jur.2d *Guaranty* § 85 reads in part:

. . . The additional security taken by the creditor may be in the form of a new guaranty. When this occurs, the prior guaranty contract is not extinguished by the execution of the subsequent contract of guaranty if the subsequent contract was not executed as a substitute for the earlier one. The mere acceptance of a guaranty of a corporate indebtedness for one year does not extinguish the liability of the makers of a similar instrument executed the preceding year. But discharge or release of the guarantor by taking a new guaranty will result when it is shown that the parties so intended.

Apparently, the lower court found, as a matter of fact, that the makers of the latter guaranty in this case intended that the guaranty of June 8, 1972, be released and discharged by the guaranty of July 12, 1972. We are bound by that decision unless the record is devoid of substantial evidence of a probative nature which would indicate that intent. After a review of the record including careful scrutiny of the guaranty agreement of July 12, 1972, we are convinced that the judgment of the lower court denying the claim of the appellant is clearly erroneous. There is no evidence in the record indicating the intent of the parties except the language of the guaranty agreement of July 12, 1972.

The reading of that agreement reveals that in its ambiguity, it is, if anything, favorable to the claim of the appellant. Therefore, we hold that the latter guaranty agreement will not release or discharge the guarantor of a prior guaranty unless the evidence clearly indicates that the parties intend the latter guaranty to release the guarantors from the prior agreement. In this case, we find no evidence of such intent; and consequently, the findings of the lower court are clearly erroneous. CR 52.-01.

We reverse the lower court and direct that judgment be entered for the appellant consistent with this opinion.

All concur.